**DICKINSON WRIGHT PLLC**
JOHN L. KRIEGER
Nevada Bar No. 6023
Email:  jkrieger@dickinsonwright.com
8363 West Sunset Road, Suite 200
Las Vegas, Nevada  89113-2210
Tel:  (702) 382-4002
Fax:  (702) 382-1661

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COLLEEN WOLSTENHOLME, an individual,<br><br>                         Plaintiff,<br><br>vs.<br><br>DAMIEN HIRST, an individual; and OTHER CRITERIA (US), LLC, a limited liability company,<br><br>                      Defendants. | CASE NO.  1:16-cv-4385<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT** |

Plaintiff Colleen Wolstenholme ("Wolstenholme"), through counsel, for her Complaint alleges as follows:

**<u>NATURE OF THE CASE</u>**

This is a case for (I) copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 et seq. (the "Copyright Act"), (II) copyright infringement under the Canadian Copyright Act R.S.C. 1985, c. C-42 ("the Act"), and (III) a related unfair competition claim, based on the infringement of Wolstenholme's works by Defendants Damien Hirst ("Hirst") and Other Criteria (US), LLC ("Other Criteria") (collectively, "Defendants") without authorization. Wolstenholme seeks damages, attorneys' fees, and costs.

1

**PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff Wolstenholme is an individual residing in Nova Scotia, Canada.

2.      Upon information and belief, Defendant Hirst is an individual residing in England, and who regularly conducts business in New York, NY.

3.      Upon information and belief, Defendant Other Criteria is a company operating Hirst's flagship retail store in the United States, with its principal place of business located at 458 Broome St., New York, NY 10013.

4.      Defendant Hirst, upon information and belief, directs and controls the actions of Defendant Other Criteria, and has authorized, controlled, and directed Defendant Other Criteria to copy Wolstenholme's Works (defined below), and to manufacture, sell, and distribute the Infringing Works (defined below). Defendant Hirst also receives pecuniary benefit from Defendant Other Criteria's activities in this regard.

5.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 (actions arising under the Constitution, laws or treaties of the U.S.), 1338(a) (actions arising under Acts of Congress relating to copyrights), and 1367(a) (supplemental jurisdiction over related claims, including claims involving joinder of parties and foreign copyright infringement claims). This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a), in that the parties are citizens of different countries; the amount in controversy exceeds $75,000.00 as to each Defendant, exclusive of interest and costs, and the exercise of supplemental jurisdiction under 28 U.S.C. § 1367(a) is consistent with the jurisdictional requirements of 28 U.S.C. § 1332, in accordance with 28 U.S.C. § 1367(b).

6.      This Court has personal jurisdiction over Defendants because they have continuous and systematic contacts with the State of New York, regularly conduct business in New York, NY, and each Defendant committed the infringing acts within this judicial district.

7.      Venue is proper in the United States District Court for the Southern District of New York under 28 U.S.C. §§ 1391(b) and 1400.

## FACTUAL ALLEGATIONS

8.      Wolstenholme is a prolific and well-regarded artist, whose work has been widely exhibited in museums and commercial galleries. She produces works in a wide range of media including jewelry, painting, sculpture, embroidery, and digital collage.

9.      She is best known for her unique jewelry and oversized sculptures of prescription drugs, and has a longstanding interest in the subject matter of drugs and their impact on society and social relationships—particularly how people have become more reliant on pharmaceutical pills to "cope" with everyday life, and, in turn, are less focused on finding the causes of their problems. Her pieces evoke the detrimental side of prescription medications and explore relationships between states of mental health and illness.

10.     Wolstenholme was inspired to create pharmaceutical jewelry by an advertisement for diamonds that was directed at male consumers. The advertisement helped Wolstenholme to identify two primary means by which our society perpetuates female oppression: one being jewelry, which men largely use to subjugate women (e.g., by marking their territory, so to speak); the second being pharmaceutical drugs, which are disproportionately prescribed to women.

11.     Wolstenholme first began creating three-dimensional sculptures derived from lost-wax castings of pharmaceutical pills in or around 1996. Wolstenholme used these sculptures in bracelets, necklaces, pendants, rosaries, earrings, cuff links and rings ("Wolstenholme's

Works"). True and accurate copies of Wolstenholme's early catalogues are attached hereto as **Exhibit 1**.

12.     Wolstenholme's Works are deliberately cast in sterling silver and gold in order to combine three very powerful cultural symbols: femininity, drugs, and money. Jewelry is typically female; pills are usually drugs that, once ingested, create dependence and exert power over a body; and gold or silver are the basis from which monetary value is derived.

13.     Wolstenholme's Works symbolize the equation drugs = money = power. Wolstenholme believes this equation is playing out on many fronts in society and, therefore, her works resonate with more than just feminist rage.

14.     Out of the thousands of pharmaceutical pills available in the marketplace, Wolstenholme used her own creativity and criteria to specifically select, organize, coordinate, and arrange certain pills to include in her Works, namely, antidepressants and psychotropic medications in general. In addition to these psychotropic drugs, Wolstenholme also chose to make charms from medication for hyperactivity and/or anxiety, sleeping disorders, HIV, and other diseases and disorders that she selected and obtained based on their connotations of suffering and societal disruption.



15.     Wolstenholme intended for her choices to create a social conversation and encourage a level of candor that would allow people to be "out" sexually, emotionally, and/or otherwise.  For example, the above 18K gold "Valley of The Dolls Bracelet" includes Valium, Percocet, Xanax, Adderall, Demerol, Prozac, Oxycodone, and Lithium; "Pill Rosary" uses a Valium pill encircled by Imovane (a sleep aid)



and Dilaudid (a narcotic analgesic) to make up the cross that dangles from a chain of black pearls with Viagra tablets as Our Father beads; another rosary uses birth control pills as Hail Mary beads and Viagra as Our Father beads and arranges Ativan anti-axiety pills to create the cross; a necklace of charms below includes Wellbutrin (antidepressant), Clozaril (antipsychotic), a thyroid medicine, and Oxycodone (a pain medication).





16.      Wolstenholme's charm bracelets in particular are extremely popular, and have become a symbol of strength and individual expression for those wearing them. Examples of such bracelets include, but are not limited to, the following images:





"Charmed"



17.      In fact, "Charmed" has been featured in various gallery displays of Wolstenholme's works over the years.

18.      Although Wolstenholme is a Canadian citizen, she published Wolstenholme's Works for the first time anywhere in the world in the United States on or around July 24, 1997, in New York, NY.

6

19.     Since creation, Wolstenholme's Works have been widely displayed and marketed in the United States and Canada, including on the Internet, and have been featured in various newspaper and magazine articles in both countries, as well as at various galleries.

20.     Wolstenholme owns several Canadian copyright registrations for the Wolstenholme Works, including Reg. No. 1128448 (Pill Charm Bracelet); Reg. No. 1128653 (Pill Charm Pendant); Reg. No. 1128652 (Pill Charm). True and accurate copies of these registration certificates are attached hereto as **Exhibit 2**.

21.     On or about November 19, 2015, Wolstenholme applied for a copyright registration on certain Wolstenholme Works, namely the Pill Charms, with the United States Copyright Office ("the Copyright Office"), which she later expedited. A true and accurate copy of the application is attached hereto as **Exhibit 3**.

22.     On or around January 6, 2016, the Copyright Office issued a refusal claiming the Pill Charms lacked sufficient authorship to support a copyright claim. However, the reviewing Copyright Examiner improperly refused the application because Wolstenholme's Pill Charms are fixed in a tangible medium, original, and possess a minimal degree of creativity.

23.     Wolstenholme accompanied her November 19, 2015 application with the necessary deposit, application form, and fee required for registration, and delivered it to the Copyright Office in the proper form, but was nonetheless refused. Wolstenholme has standing to bring suit for copyright infringement based on the claims contained therein, under 17 U.S.C. § 411(a)

24.     Moreover, on or around May 16, 2016, Wolstenholme submitted an application to the Copyright Office for U.S. registration for the work known as "Charmed" (shown above). A true and accurate copy of the application is attached hereto as **Exhibit 4**. This pending

"Charmed" application also provides Wolstenholme with standing to sue for copyright infringement based on the claims therein.

      25.     Upon information and belief, Defendant Hirst is an internationally recognized artist, entrepreneur, and art collector.

      26.     However, Hirst's career has been rather notorious, and he has been the subject of numerous allegations of copying fellow artists.

      27.     Upon information and belief, Hirst knew of Wolstenholme and the Wolstenholme Works as early as March 1998, if not earlier, and had access to the Works.

      28.     Without Wolstenholme's consent, Hirst copied and/or created derivative works of the Wolstenholme Works, namely Wolstenholme's Pill Charms and Pill Charm Bracelet, which were and are identical and/or substantially similar to Wolstenholme's Works, and include, but are not limited to, the following:

 



(collectively, the "Infringing Works").

29.     When viewed side by side, the Works and the Infringing Works are identical and/or substantially similar:

     

30.     Upon information and belief, Hirst began creating, distributing, displaying and selling the Infringing Works as early as 2004.

31.     Upon information and belief, Defendants, and each of them, have sold and continue to sell the Infringing Works through various channels of commerce, including on Hirst's website located at www.othercriteria.com, at Other Criteria's New York City store, and at art galleries, art fairs, and jewelry boutiques worldwide, including those located within the State of New York.



(Photo taken at Other Criteria in New York City on or around May 5, 2016).

32.     Upon information and belief, without Wolstenholme's consent, the Infringing Works are manifest reproductions of the Works; and Defendants, and each of them, are responsible for willfully and wrongfully copying, creating, manufacturing, distributing, and/or selling the Infringing Works on an ongoing and continuous basis.

## COUNT I
### (Copyright Infringement)

33.     Wolstenholme incorporates the allegations in the foregoing paragraphs as if fully set forth herein.

34.     The Wolstenholme Works are original works of authorship fixed in a tangible medium from which they can be perceived, and therefore constitute copyrightable subject matter protectable under the Copyright Act.

35.     Wolstenholme owns valid copyrights for the Wolstenholme Works.

36.     Defendants, and each of them, infringed on Wolstenholme's copyrights in the Wolstenholme Works, including the Wolstenholme Pill Charms, by reproducing, creating derivative works, distributing, publicly displaying, and/or selling the Infringing Works throughout the world, including in the United States and Canada, without Wolstenholme's authorization.

37.     Defendants' infringement, and infringement by each of them, was done knowingly and willfully in violation of Wolstenholme's copyrights.

38.     Defendant Hirst's infringement, which continues to this day, has been continuous and ongoing since 2004.

39.     Defendant Other Criteria's infringement, which continues to this day, has been continuous and ongoing since 2014.

40.     As the direct and proximate result of Defendants' infringement, and each of them, Wolstenholme has suffered, and will continue to suffer, damage. The harm caused by Defendants', and each of their, activities is both irreparable and not fully compensable by monetary damages.

41.     Wolstenholme is entitled to permanent injunctive relief and an award of damages.

42.     Defendants' acts, and each of them, were willful and in disregard of Wolstenholme's rights.

<u>COUNT II</u>
<u>(Copyright Infringement Under the Laws of Canada)</u>

43.     Wolstenholme incorporates the allegations in the foregoing paragraphs as if fully set forth herein.

44.     This is an action for copyright infringement under Section 27(1) of the Canadian Copyright Act R.S.C. 1985, c. C-42 ("the Act").

45.     Copyright infringement constitutes a transitory cause of action, and may be adjudicated in the courts of a sovereign other than the one in which the cause of action arose.

46.     *The Berne Convention for the Protection of Literary and Artistic Works*, to which the United States and Canada are signatories, provides that works authored by citizens of

11

signatory states must be accorded at least the same copyright protection in other signatory states as such states accord works authored by their own citizens, and Canada accords such "national treatment" to U.S. authors, pursuant to, inter alia, Section 5(1) of the Act. Thus, at the time the Works were completed, the copyrights therein were protected under Canadian law, without registration or any further formalities.

47.     Wolstenholme subsequently obtained registrations on the Works in Canada.

48.     Defendants, and each of them, have infringed Wolstenholme's copyrights in the Work, under Section 27(1) of the Act, by, inter alia, copying and/or creating derivative works based upon the Wolstenholme Works, and offering the same for sale in Canada, and to otherwise deal with rights in the Wolstenholme Works reserved exclusively to copyright owners under Section 3(1) of the Act, all without Wolstenholme's consent.

49.     Wolstenholme is entitled to a permanent injunction against Defendants, and each of them, for their acts of copyright infringement under Canadian law, pursuant to Section 34(1) of the Act.

50.     Wolstenholme is also entitled to damages from Defendants, and each of them, for their acts of Canadian copyright infringement, in an amount to be determined at trial, under Sections 34(1) and 35 of the Act, together with such part of said Defendants' profits from such infringements as the Court considers just.

### COUNT III
### (Unfair Competition)

51.     Wolstenholme incorporates the allegations in the foregoing paragraphs as if fully set forth herein.

52.     Defendants, and each of them, caused the Infringing Works to be fraudulently misrepresented and/or passed off as works originating from Wolstenholme.

53.     Defendants' actions, and the actions of each of them, were done without the approval or consent of Wolstenholme, and were likely to cause confusion or cause mistake as to the origin, sponsorship, or approval of Defendants' services or commercial activities by Wolstenholme.

54.     Defendants, and each of them, have and continue to engage in unfair competition with Wolstenholme by: (1) copying, publishing, displaying, vending, distributing, selling, utilizing, promoting, and otherwise commercially benefiting from the Infringing Works, which are likely to deceive and confuse the public into believing that the Infringing Works and their designs are sponsored by, licensed by, endorsed by, connected to, affiliated with, or are otherwise associated with Wolstenholme; and (2) misappropriating or attempting to misappropriate Wolstenholme's Works and the goodwill and reputation associated therewith.

55.     In addition, upon information and belief, the prices charged by Defendants for the Infringing Works are substantially higher than those charged by Wolstenholme for the original Works.

56.     As a direct and proximate result of such unfair competition, Wolstenholme has suffered, and will continue to suffer, monetary loss and irreparable injury to her business, reputation, and goodwill.

57.     Defendants' actions, and the actions of each of them, were done willfully, with the intent to injure Wolstenholme, and in conscious disregard of Wolstenholme's rights. Therefore, Defendants, and each of them, are guilty of malice, oppression, and fraud, and Wolstenholme is entitled to an award of punitive damages appropriate to punish Defendants, and to deter others from engaging in similar misconduct.

## PRAYER FOR RELIEF

WHEREFORE, Wolstenholme respectfully prays that the Court grant the following relief:

1.     a permanent injunction preventing their officers, agents, servants, employees, related companies, parent companies, subsidiary companies, licensees, assigns, and all parties in privity and/or acting in concert with them, from copying, manipulating, reproducing, distributing, selling, or displaying Wolstenholme's Works or derivatives thereof, including, but not limited to, the Infringing Works, pursuant to 17 U.S.C. § 502;

2.     an order impounding all copies of the Infringing Works and any other infringing products, and all articles by means of which such copies may be produced and a permanent order for destruction of same, pursuant to 17 U.S.C. § 503;

3.     an order requiring Defendants, and each of them, to cancel any orders for Infringing Works;

4.     an accounting and award of all damages suffered by Wolstenholme and all profits earned by Defendants, and each of them, attributable to the copyright infringement, pursuant to 17 U.S.C. § 504;

5.     a permanent injunction preventing Defendants, and each of them, from committing further acts of infringement in Canada, including copying, creating derivative works based upon the Works, and/or authorizing the same;

6.     an award of damages for acts of copyright infringement, and authorizations of copyright infringement, under the laws of Canada, and that said damages be enhanced, to the full extent permitted therein, as a result of the flagrancy and willfulness of Defendants', and each of their, infringing acts, in utter disregard for Plaintiff's ownership of the copyrights in the Work, and, the need to deter similar future acts of copyright infringement;

7.      an order permanently enjoining and restraining Defendants, their officers, agents, servants, employees, related companies, parent companies, subsidiary companies, licensees, assigns, and all parties in privity and/or acting in concert with them from: (a) falsely representing that Wolstenholme's Works are Defendants' own products; (b) filling any orders for any products which were sold or for which sales were solicited by using Wolstenholme's Works or imitations thereof; (c) copying, publishing, displaying, vending, distributing, selling, utilizing, promoting and otherwise commercially benefiting from the Infringing Works, which are confusingly similar in appearance or design to Wolstenholme's Works; (d) unfairly competing with Wolstenholme; and/or (e) copying, misappropriating, or attempting to misappropriate Wolstenholme Works and Wolstenholme's goodwill and reputation associated therewith;

8.      an accounting and award of compensatory damages, including, but not limited to, Defendants' profits and an award of damages sustained by Wolstenholme as a result of Defendants', and each of their, willful and wrongful acts of unfair competition;

9.      imposition of a constructive trust for the benefit of Wolstenholme on all revenue generated by Defendants, and each of them, from the sale of the Infringing Works, or any substantially similar products, and from Defendants' other tortious conduct;

10.     a finding that Defendants', and each of their, infringement was willful, wanton, and intentional;

11.     an award of punitive damages for Defendants' willful and malicious conduct;

12.     an award of all costs and reasonable attorneys' fees; and

13.    such other and further relief as the Court may deem just and equitable under the circumstances.

Dated: June 10, 2016.

Respectfully submitted,

*/s/ John L. Krieger*
**DICKINSON WRIGHT PLLC**
JOHN L. KRIEGER
Nevada Bar No. 6023

*Attorneys for Plaintiff*