UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————————

COLLEEN WOLSTENHOLME,

                    Plaintiff,              16 Civ. 4385 (JGK)

          – against –                       OPINION AND ORDER

DAMIEN HIRST, ET AL.,

                    Defendants.

————————————————————————————

JOHN G. KOELTL, District Judge:

     This case concerns competing intellectual property claims
to use replicas of pharmaceutical pills in jewelry.  The
plaintiff, Colleen Wolstenholme, brings this action against
Damien Hirst and Other Criteria (US), LLC, alleging copyright
infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101
et seq. and the Canadian Copyright Act, R.S.C. 1985, c. C-42, s.
27, as well as state law claims of unfair competition and trade
dress infringement.  The plaintiff alleges that three pieces of
jewelry sold by the defendants, specifically two bracelets and a
necklace, infringe on her works.  All of the works at issue use
replicas of pharmaceutical pills in various arrangements.

     The defendants have moved to dismiss the complaint under
Federal Rule of Civil Procedure 12(b)(6) for failure to state a
claim upon which relief can be granted.  The defendants argue
that the plaintiff's works are neither original nor
substantially similar to their works.  They further argue that

                              1

plaintiff's state law claims are preempted by the United States Copyright Act. For the reasons explained below, the motion to dismiss is **granted.**

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When

2

presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Mercator Corp. v. Windhorst, 159 F. Supp. 3d 463, 466 (S.D.N.Y. 2016).

## II.

The following facts alleged in the First Amended Complaint ("FAC") are accepted as true for purposes of the defendants' motion to dismiss.

The plaintiff is an artist and trained metallurgist from Nova Scotia, Canada. FAC ¶ 1, 9-10. In or around 1996, the plaintiff began designing jewelry which incorporated replicas of pharmaceutical pills. FAC ¶ 13. At issue in this case are three of her designs (the "Wolstenholme Works"). The first work is a set of silver and/or gold replicas of various pharmaceutical pills (the "Pill Charms"). FAC ¶¶ 15-17, Ex. 1. To create the replica pills, the plaintiff uses a "lost-wax casting process". FAC ¶ 15. Once they are replicated in the metal medium, the pills are soldered with a small metal loop to make them usable as charms. FAC ¶ 15. Each Pill Charm is

3

intended to be a realistic replica of the pharmaceutical pill.
FAC ¶ 15-16.

The second work is a charm bracelet incorporating some of plaintiff's Pill Charms as charms on the bracelet ("Charmed"). FAC ¶ 21-22. The plaintiff has designed and published three versions of the Charmed bracelet, using different Pill Charms in different orders in each version. FAC ¶ 21. One version of Charmed incorporates 15 charms; the other two versions each incorporate 20 charms. FAC ¶ 21.

The last work is a rosary-style necklace, which incorporates some of plaintiff's Pill Charms into the chain and pendant ("Hail Mary"). FAC ¶ 25. Hail Mary includes a cross pendant made from a combination of three different Pill Charms, beads made of birth control Pill Charms, and "Our Father" beads made of Viagra Pill Charms. FAC ¶ 25.

In designing these works, the plaintiff chose to use replicas of pharmaceutical pills which she claims are "known for their connotations of suffering and societal disruptions", such as psychotropic medications. FAC ¶ 17. The plaintiff claims that these works were intended by the plaintiff to be "an indictment of society's treatment of pharmaceutical drugs". FAC ¶ 16.

The plaintiff owns a Canadian copyright registration for each of the three works. FAC ¶ 29. However, her applications

4

for copyright registrations in the United States were denied for all three works.[1] FAC ¶ 30-37; Defs.' Reply Br. 1; Simmons Decl. Ex. A.

The plaintiff alleges that the defendants manufacture and sell three works that infringe Pill Charms, Charmed and/or Hail Mary (the "Hirst Works"). Two of the alleged infringing works are bracelets that also incorporate replicas of pharmaceutical pills as charms (the "Hirst Bracelets"). FAC ¶ 45. The third is a rosary necklace that incorporates replica pills into the chain and pendant (the "Hirst Necklace"). FAC ¶ 45. The plaintiff alleges that the Hirst Bracelets and Hirst Necklace are substantially similar to, and therefore infringe, her works. FAC ¶ 48.

The First Amended Complaint alleges four counts: (1) copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq.; (2) copyright and moral rights infringement under the Canadian Copyright Act, R.S.C. 1985, c. C-42, s. 27, 28.1; (3) common law trade dress infringement and unfair competition; and (4) unfair competition under New York General Business Law § 360. The defendant moves to dismiss all of the plaintiff's claims.

---

[1] The defendant correctly notes that the plaintiff failed to disclose in its opposition to the current motion that the "Hail Mary" registration application had been denied by the United States Copyright Office on December 20, 2016.

**III.**

The defendant argues that the plaintiff has failed to state a claim for copyright infringement under the Copyright Act of 1976, as alleged in Count One of the First Amended Complaint.

"To establish copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Williams v. Crichton, 84 F.3d 581, 587 (2d Cir. 1996) (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)); see also ABKCO Music, Inc. v. Stellar Records, Inc., 96 F.3d 60, 64 (2d Cir. 1996); Yurman Design, Inc. v. Golden Treasure Imps., Inc., 275 F. Supp. 2d 506, 513 (S.D.N.Y. 2003). See also Porto v. Guirgis, 659 F. Supp. 2d 597, 608 (S.D.N.Y. 2009).

The defendants argue that the plaintiff has not sufficiently alleged either element of copyright infringement and therefore her claim must be dismissed as a matter of law.

**A.**

The defendants argue that the plaintiff's jewelry lacks the requisite originality to qualify for copyright protection.

The plaintiff admittedly does not have registered copyrights in the United States for any of her works. The plaintiff applied for copyright registrations on November 19, 2015 (Pill Charms), May 18, 2016 (Charmed) and October 26, 2016

6

(Hail Mary). FAC ¶¶ 30, 32, 37; Exs. 3-5. The United States Copyright Office rejected all three copyright applications on the grounds that the works lacked originality. FAC ¶ 31, 33; Defs.' Reply Br. 1; Simmons Decl. Ex. A. However, "[w]here the Copyright Office denies registration, and the unsuccessful applicant brings an infringement action, courts nonetheless make an independent determination as to copyrightability." Aqua Creations USA Inc. v. Hilton Hotels Corp., No. 10-cv-246 (PGG), 2011 WL 1239793, at *3 (S.D.N.Y. Mar. 28, 2011), aff'd sub nom. Aqua Creations USA Inc. v. Hilton Worldwide, Inc., 487 F. App'x 627 (2d Cir. 2012); see also Ward v. Nat'l Geographic Soc'y, 208 F. Supp. 2d 429, 445 (S.D.N.Y. 2002).

"To qualify for copyright protection, a work must be original to the author." Feist Publications, 499 U.S. at 345-37. The requirements for originality are "modest." Weissmann v. Freeman, 868 F.2d 1313, 1321 (2d Cir. 1989). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." Feist, 499 U.S. at 345 (citation omitted). "[T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." Id. (internal

7

quotation marks omitted). See also Gym Door Repairs, Inc., 206
F. Supp. 3d at 896.

However, "[a]lthough the standard of originality is low, it
is not without effect. A work must possess more than a *de
minimis* quantum of creativity." Earth Flag Ltd. v. Alamo Flag
Co., 153 F. Supp. 2d 349, 353 (S.D.N.Y. 2001) (citing Feist, 499
U.S. at 362 ("The standard of originality is low, but it does
exist.")).

Because the plaintiff has included images of the designs at
issue in the First Amended Complaint, see FAC ¶¶ 21, 25, 48, the
Court may consider on a motion to dismiss whether the design is
entitled to copyright protection. See Jovani Fashion, Ltd. v.
Cinderella Divine, Inc., 808 F. Supp. 2d 542, 549 (S.D.N.Y.
2011) (considering whether design elements visible in picture of
dress attached as exhibit to complaint are entitled to copyright
protection), aff'd sub nom., Jovani Fashion, Ltd. v. Fiesta
Fashions, 500 F. App'x 42 (2d Cir. 2012).

### 1.

In her First Amended Complaint, the plaintiff alleged a
claim under the Copyright Act based on the infringement of the
Pill Charms. FAC ¶¶ 13, 56-71. However, at the argument on the
current motion, the plaintiff withdrew her claim that the pills
were themselves copyrightable. This concession was
understandable in light of cases stating that derivative works

which simply cast a prior work in a new medium are not original. See Durham Indus. v. Tomy Corp., 630 F.2d 905, 910 (2d Cir. 1980) (plastic reproductions of copyrighted Disney characters were not copyrightable); L. Batlin & Sons v. Snyder, 536 F.2d 486, 491 (2d Cir. 1976) (plastic reproduction of the classic cast iron Uncle Sam toy bank in the public domain was not copyrightable); Earth Flag Ltd., 153 F. Supp. 2d at 354 (fabric reproduction of picture of a flag in the public domain was not copyrightable).

Accordingly, the Court dismisses the claim for copyright infringement of the Pill Charms under the United States Copyright Act.

## 2.

With respect to Charmed and Hail Mary, the plaintiff maintains her claim for copyright infringement, arguing that the particular selection, coordination, and arrangement of the Pill Charms on the bracelet and necklace satisfy the creativity requirement. In response, the defendants argue those works lack sufficient originality to qualify for copyright protection.

A work may be copyrightable even though it is entirely a compilation of unprotectable elements. See Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 109 (2d Cir. 2001); Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), 71 F.3d 996, 1003-04 (2d Cir. 1995). In such works, the originality inheres in the way the author has

"selected, coordinated, and arranged" the elements of her work. Knitwaves, Inc., 71 F.3d at 1003-04 (internal citation omitted). "The Copyright Act protects original and minimally creative selection of preexisting, unprotected materials (such as facts) for inclusion in a work, as well as original and creative arrangement of those materials." Matthew Bender & Co. v. West Pub. Co., 158 F.3d 674, 681 (2d Cir. 1988).

The plaintiff has alleged sufficient originality in the selection, coordination and arrangement of the Pill Charms in Charmed and Hail Mary to survive a motion to dismiss. In designing Charmed and Hail Mary, the plaintiff alleges that she uniquely selected for inclusion in her jewelry only certain pills from the thousands available on the market. FAC ¶¶ 17, 19. For each of these works, she also combined and arranged the charms to express her idea for pill-inspired jewelry. FAC ¶¶ 19, 22, 26. For Charmed, the plaintiff selected a "unique combination of pharmaceutical charms arranged in a pattern of various sized round and other geometric shaped tablets intermixed with capsules". FAC ¶ 22. The plaintiff also interspersed charms "for weight and symmetry" and grouped together replications of pills that are often prescribed together. FAC ¶ 22. For Hail Mary, the plaintiff alleges that she "creatively selected" which pharmaceutical pills to use in

10

the crucifix and "creatively [] coordinate[d] and arranged the pill-charm sculptures" on the chain. FAC ¶ 26.

The creative selection, arrangement and combination of the pills used in Charmed and Hail Mary is sufficient to meet the low bar of originality. See Yurman Design, Inc., 262 F.3d at 110 ("[T]he originality in Yurman's four designs inheres in the ways Yurman has recast and arranged those constituent elements [in his jewelry]."); Odegard, Inc. v. Costikyan Classic Carpets, Inc., 963 F. Supp. 1328, 1335 (S.D.N.Y. 1997) (holding that the "plaintiffs' arrangement of [] motifs [on the carpet] . . . would be sufficiently original to be copyrightable" even if the motifs themselves were not protectable); I.C. ex rel Solovsky v. Delta Galil USA, 135 F. Supp. 2d 196, 214-15 (S.D.N.Y. 2015).

Accordingly, Charmed and Hail Mary are sufficiently original to be protectable under the Copyright Act.

**B.**

The defendants next argue that, even if the plaintiff's works are sufficiently original to warrant copyright protection, the Hirst Works nevertheless do not infringe on the plaintiff's designs because they are not substantially similar.

To succeed on an infringement claim, a plaintiff must demonstrate that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and

11

the protectable elements of plaintiff's." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 63 (2d Cir. 2010) (internal quotation marks and citations omitted).

In the absence of proof of actual copying, a plaintiff may establish copying by demonstrating access to the copyrighted work and that "there are similarities between the two works that are probative of copying." Guirgis, 659 F. Supp. 2d at 608 (internal citation omitted). In this case, access is not disputed; nor do the defendants dispute sufficient "probative similarity" to show copying. Rather the defendants dispute that the plaintiff has shown that the alleged copying was illegal because of the "substantial similarity" between the defendants' works and the protectable elements of the plaintiff's works.

In most cases, the test for substantial similarity is the ordinary observer test, which requires a determination whether the average lay observer would find that the defendant appropriated the alleged copy from the copyrighted work. See Knitwaves, Inc., 71 F.3d at 1002; Folio Impressions, Inc. v. Byer Cal., 937 F.2d 759, 765-66 (2d Cir. 1991). However, when a work contains both protectable and unprotectable elements, a court should apply the more discerning ordinary observer test by attempting to eliminate the unprotectable elements from consideration and comparing only the protectable elements for substantial similarity. See Knitwaves, 71 F.3d at 1002; Folio

12

*Impressions*, 937 F.2d at 765–66; *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 141 (2d Cir. 1992). As explained by the Court of Appeals for the Second Circuit:

> [T]he plaintiff must show that the defendant appropriated the plaintiff's particular means of expressing an idea, not merely that he expressed the same idea. The means of expression are the "artistic" aspects of a work; the "mechanical" or "utilitarian" features are not protect[a]ble . . . . We focus on whether an ordinary lay observer would overlook the dissimilarities between the artistic (protect[a]ble) aspects of the two works and would conclude that one was copied from the other. Where, as here, we compare products that have both protect[a]ble and unprotect[a]ble elements, we must exclude comparison of the unprotect[a]ble elements from our application of the ordinary observer test.

*Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994) (citations omitted). This more discerning ordinary observer test does not change the degree of similarity required, only what elements of the works are being compared. *Guirgis*, 659 F. Supp. 2d at 609–10.

Like the ordinary observer test, the more discerning ordinary observer test still takes into account the work's "total concept and feel.'" *Knitwaves*, 71 F.3d at 1003 (quoting *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500 (2d Cir. 1982)); *see also M.H. Segan Ltd. P'ship v. Hasbro, Inc.*, 924 F. Supp. 512, 521 (S.D.N.Y. 1996) ("Through *Knitwaves*, the Second Circuit has recently reconfirmed that the more discerning ordinary observer test is not an invitation to dissect a work into its constituent elements or features. The works as a whole

must be compared to each other."). "This 'discerning ordinary observer' inquiry entails not a piecemeal comparison of each of the protect[a]ble elements with its putative imitation, but rather a careful assessment of the 'total concept and feel' of the works at issue, <u>after</u> the non-protect[a]ble elements have been eliminated from consideration." <u>Silberstein v. Fox Entm't Grp., Inc.</u>, 424 F. Supp. 2d 616, 631 (S.D.N.Y. 2004), <u>aff'd sub nom.</u>, <u>Silberstein v. John Does 1-10</u>, 242 F. App'x 720 (2d Cir. 2007). "In the end, our inquiry necessarily focuses on whether the alleged infringer has misappropriated the original way in which the author has selected, coordinated, and arranged the elements of his or her work." <u>Gaito Architecture</u>, 602 F.3d at 66. <u>See also</u> <u>Lone Wolf McQuade Assocs. v. CBS Inc.</u>, 961 F. Supp. 587, 592-93 (S.D.N.Y. 1997.

A district court can resolve the question of substantial similarity as a matter of law if "the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." <u>Gaito Architecture</u>, 602 F.3d at 63 (quoting <u>Warner Bros. Inc. v. Am. Broad. Cos.</u>, 720 F.2d 231, 240 (2d Cir. 1983)). "[W]here, as here, the works in question are attached to a plaintiff's complaint, it is entirely appropriate for the district court to consider the similarity between those works in

14

connection with a motion to dismiss, because the court has
before it all that is necessary in order to make such an
evaluation." Id. at 64. See also Jovani Fashion, Ltd., 808 F.
Supp. 2d at 549.

The defendant argues that the works are not substantially
similar under this test because any similarity relates to idea,
and not to expression. It is plain that the idea for a design
is not protected; rather, only the expression of that idea is
protected. See, e.g., Ritani, LLC v. Aghjayan, 880 F. Supp. 2d
425, 442 (S.D.N.Y. 2012) ("Copyright protection does not extend
to functional element[s] of Plaintiff's jewelry . . . Protection
thus cannot extend to the 'idea' or 'concept' which lies behind
Plaintiff's jewelry, but only to the expressions of those ideas
contained in the disputed pieces themselves." (internal
quotation marks omitted)); Guirgis, 659 F. Supp. 2d at 610.

Therefore, the concept of pill-inspired jewelry is an
unprotectable idea. See Herbert Rosenthal Jewelry Corp. v.
Honora Jewelry Co., 509 F.2d 64, 65-66 (2d Cir. 1974) (copyright
on a gold pin shaped like a turtle did not give the owner a
right to exclude all others from manufacturing gold turtle
pins); Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d
738, 742 (9th Cir. 1971) ("A jeweled bee pin is [] an 'idea'
that defendants were free to copy"). Any similarities in the
bracelets and necklaces that stem merely from the fact that they

15

are both pieces of jewelry that incorporate replica pills must be excluded under the substantial similarity analysis. Id.

Thus, the Court must consider the plaintiff's selection, coordination, and arrangement of the replica pills on Charmed and Hail Mary to determine whether the overall "look and feel" is substantially similar to those elements found in the Hirst Works, without considering the unprotectable elements such as the idea for pill-inspired jewelry, or the idea for a charm bracelet or a jeweled rosary. See Silberstein, 424 F. Supp. 2d at 631. Applying this test, it is plain that the Hirst Bracelets and Necklace are not substantially similar to Charmed and Hail Mary.

The Hirst Bracelets contain numerous differences from Charmed in the selection, arrangement and coordination of the charms.[2] The bracelets are comprised of different replica pill charms and a different number of pill charms. The arrangement of the charms is thus necessarily different in each bracelet. FAC ¶¶ 21, 45. Notably, two of the charms on each of the Hirst bracelets are not even replicas of pills. One bracelet has a diamond-encrusted skull charm, as well as a plaque charm which

---

[2] The Court considered all versions of Charmed in this analysis. The two earlier versions of Charmed that were not registered with the United States Copyright Office are foreign works that were not required to be registered and therefore can properly be considered in this motion.

is etched with Mr. Hirst's name on the front and his signature and an edition number on the back. FAC ¶ 45; Cendali Decl. Ex. H. The second bracelet has the same plaque charm with Mr. Hirst's name, as well as a pill-shaped charm engraved with Mr. Hirst's signature. FAC ¶ 45; Cendali Decl. Ex. I. These are charms plainly unique to Mr. Hirst and are not similar to any charms on Charmed.[3]

Similarly, the Hirst Necklace is different from Hail Mary in numerous ways. First, Hail Mary is cast in silver, and the Hirst Necklace is cast in gold. FAC ¶ 49. The two necklaces incorporate a different number of replica pills in their chains: Hail Mary incorporates 62 pill replicas, and the Hirst Necklace incorporates only 5. FAC ¶ 45; Cendali Ex. J. Further, the replica pills in defendants' necklace are not literal replications like those in Hail Mary, but instead contain precious jewels adorned around the edges of the pills. FAC ¶ 45; Cendali Decl. Ex. J. The pendants on the necklaces, the focal point of the jewelry, are also substantially different. Hail Mary's pendant is comprised of nine replica pills arranged to form a cross. FAC ¶ 25. The pendant on Hirst's Necklace, by contrast, is a single replica capsule,

---

[3] Additionally, at argument, counsel for the parties represented that the Hirst Bracelets retail for about £11,000 and Charmed retails at a few hundred dollars.

which has been split open and has small jewel-covered beads spilling from its interior. FAC ¶ 45; Cendali Decl. Ex. J. The pill in the pendant is also imprinted with Mr. Hirst's initials and those of his collaborator, along with an edition number.[4] FAC ¶ 45; Cendali Decl. Ex. J.

These differences in the selection, arrangement, coordination, design, and number of replica pills on the two sets of works render the overall look and feel of the protectable aspects of the jewelry dissimilar. Any similarity of the jewelry is attributable to the fact that both artists were working from the same basic design premise. See Kalpakian, 446 F.2d at 742 ("There is no greater similarity between the pins of plaintiff and defendants than is inevitable from the use of jewel-encrusted bee forms in both.").

The plaintiff argues that some of the pills used in the Hirst Works are markedly similar in shape and size to those used in the plaintiff's works. But any such similarity relates to a nonprotectable element of the bracelets, because there is no claim of originality with respect to Pill Charms. The plaintiff also argues that a sequence of charms on each of the Hirst Bracelets is nearly identical to a sequence on Charmed.

_____

[4] As with the bracelets, the price point of the two necklaces is different. Counsel represented at argument that Hail Mary retails for a few hundred dollars, and the Hirst Necklace retails at about £40,000.

FAC ¶ 49. However, the sequence is only six charms in one Hirst bracelet (out of 17), see FAC ¶ 49(a), and five charms in the second Hirst bracelet (out of 17), see FAC ¶ 49(b), and the location of the sequence in relation to the clasp on the Hirst Bracelets is not the same as the location on Charmed. Further, the differences in the bracelets, most notably the addition of charms that are not replica pills and specifically identify Mr. Hirst, outweigh this similarity.

Accordingly, because the Hirst Works are not substantially similar to Charmed or Hail Mary, the claim for copyright infringement of these works under the United States Copyright Act is dismissed.

IV.

In Count Two of the First Amended Complaint, the plaintiff has alleged a claim for copyright and moral rights infringement under the Canadian Copyright Act, R.S.C. 1985, c. C-42, s. 27, 28.1. The defendants argue that this claim must be dismissed for the same reasons that the copyright infringement claim under the United States Copyright Act must be dismissed. Canadian Copyright law is substantially similar to its United States counterpart.

In deciding a motion to dismiss with respect to a claim involving foreign law, the Court is permitted to consider "any relevant material or source, including testimony, whether or not

19

submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." Fed. R. Civ. P. 44.1; see also Oei Hong Leong v. Goldman Sachs Grp., Inc., No. 13-cv-8655 (JMF), 2014 WL 2893310, at *4 (S.D.N.Y. June 25, 2014).

To state a claim for copyright infringement under Canadian law, the plaintiff must show both that her work is original and that the infringing work copied a substantial part of that original work. Cinar Corp. v. Robinson, [2013] 3 S.C.R. 1168, para. 24-25 (Can.). The plaintiff alleges infringement of the same works of art and on the same basis as her claim for United States copyright infringement.

Under Canadian Law, "[w]hat is required to attract copyright protection in the expression of an idea is an exercise of skill and judgment." CCH Canadian Ltd. v. Law Society of Upper Canada, [2004] 1 S.C.R. 339, paras. 16, 25 (Can.). "The exercise of skill and judgment required to produce the work must not be so trivial that it could be characterized as a purely mechanical exercise." Id. "[I]n Canada, as in the United States, Copyright protection does not extend to facts or ideas, but is limited to the expression of ideas." CCH, 1 S.C.R. 339, para. 22.

The plaintiff has also withdrawn her claim for copyright infringement under Canadian Copyright law based on the Pill

Charms. Accordingly, the Court dismisses the claim for infringement of the Pill Charms under the Canadian Copyright Act.

However, the plaintiff maintains her claim for copyright infringement under the Canadian Copyright Act for Charmed and Hail Mary. The defendants argue that these works do not meet the Canadian standard of originality.

These works are sufficiently original under Canadian law, because the plaintiff exercised skill and judgment in the selection and arrangement of the Pill Charms incorporated into those pieces. See Slumber-Magic Adjustable Bed Co. v. Sleep-King Adjustable Co. (1984), 3 C.P.R. (3d) 81 (B.C. S.C.) at ¶ 17 ("[T]he arrangement of elements taken from other sources is the product of the plaintiff's thought, selection, and work. It is not the several components that are the subject of the copyright, but the overall arrangement of them which the plaintiff through his industry has produced.").

However, the Canadian Copyright claim must be dismissed because the Hirst Bracelets and Necklace do not infringe on the originality of Charmed and Hail Mary. Infringement occurs under Canadian law when a "substantial part" of the work at issue has been reproduced. Cinar, 3 S.C.R. 1168, para. 26. A substantial part of a work is "a part of the work that represents a substantial portion of the author's skill and judgment expressed

therein." Id. Additionally, the copied material must "form[] a substantial part of the infringed work." Cinar, 3 S.C.R. 1168, para. 27. When considering whether two works are substantially similar, the court considers "the cumulative effect of the features copied from the work to determine whether those features amount to a substantial part of [the plaintiff's] skill and judgment expressed in his work as a whole." Cinar, 3 S.C.R. 1168, para. 36. As in the United States, Canadian courts look to the protected pieces of the works to determine whether there has been infringement. Cinar, 3 S.C.R. 1168, para. 24 ("Infringement consists of the unauthorized taking of th[e] originality [of a work].")

Applying the Canadian standard, there has been no infringement under the Canadian Copyright Act for the same principal reasons discussed above in the analysis of the claim for infringement under the United States Copyright Act. The originality that the plaintiff contributed to the pieces of jewelry -- the selection and arrangement of the Pill Charms -- was not substantially copied by the defendants. The bracelets and necklaces incorporate different pills in a different arrangement. Additionally, as discussed in detail above, the addition to both Hirst Bracelets of charms unique to Mr. Hirst and the significant differences in the chain and pendant of the necklaces render the works different from a holistic point of

view. Cinar, 3 S.C.R. 1168, para. 40 ("If the differences are so great that the work, viewed as a whole, is not an imitation but rather a new and original work, then there is no infringement.").

The small section of the Hirst Bracelets which contain similarly shaped pills in a similar order as Charmed does not amount to a "substantial part of the infringed work", considering that Charmed incorporates more than 10 additional charms dissimilar to the charms on the Hirst Bracelets. FAC ¶ 49. This alleged similarity in a small section of the bracelets is not sufficient to support a claim of infringement. Cinar, 3 S.C.R. 1168, paras. 27, 39 ("The question of whether there has been substantial copying focuses on whether the copied features constitute a substantial part of the plaintiff's work . . . ." (emphasis in original)).

Because the Pill Charms are not original and the Hirst Bracelets and Necklace are not substantially similar to Charmed and Hail Mary, the plaintiff's claim for infringement under the Canadian Copyright Act fails. Because there has been no copyright infringement, the plaintiff's moral rights claim fails as well. Drassinower Decl. ¶¶ 33-34; Drassinower Reply Decl. ¶¶ 35-38.

## V.

In Counts Three and Four of the First Amended Complaint, the plaintiff has alleged state law claims of unfair competition and trade dress infringement. The defendants argue that these claims are preempted by the Copyright Act.

## A.

The Copyright Act preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by" the federal Copyright Act. 17 U.S.C. § 301(a). A state law claim is preempted if the following requirements are met: (1) the particular work to which the state law claim applies falls within the type of works protected by the Copyright Act in 17 U.S.C. §§ 102 and 103; and (2) the state law claims seek to vindicate "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by [17 U.S.C. § ] 106." See 17 U.S.C. § 301(a); Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004); Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 848 (2d Cir. 1997). The first prong of this test is called the "subject matter requirement" and the second prong of the test is called the "general scope requirement." See Briarpatch, 373 F.3d at 305; Nat'l Basketball Ass'n, 105 F.3d at 848.

The subject matter requirement is satisfied if the claim applies to "a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works." Briarpatch, 373 F.3d at 305; Nat'l Basketball Ass'n, 105 F.3d at 848–49. The work "need only fit into one of the copyrightable categories in a broad sense" and "need not consist entirely of copyrightable material in order to meet the subject matter requirement." Briarpatch, 373 F.3d at 305 (citing Nat'l Basketball Ass'n, 105 F.3d at 848–50).

The general scope requirement is met "only when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." Id.; accord Comput. Assocs. Int'l, Inc. v. Altai Inc., 982 F.2d 693, 716 (2d Cir. 1992) (quoting Harper & Row, Publishers, Inc. v. Nation Enters., 723 F.2d 195, 200 (2d Cir. 1983), rev'd on other grounds, 471 U.S. 539 (1985)). Additionally, "the state law claim must not include any extra elements that make it qualitatively different from a copyright infringement claim." Briarpatch, 373 F.3d at 305; Nat'l Basketball Ass'n, 105 F.3d at 851; Comput. Assocs., 982 F.2d at 716. Courts in this circuit take a restrictive view of which extra elements transform a state law claim that is otherwise equivalent to a claim for copyright infringement into a claim that is "qualitatively different" from a copyright infringement

25

claim. See Briarpatch, 373 F.3d at 306; Nat'l Basketball Ass'n,
105 F.3d at 851. In determining whether a state law claim is
"qualitatively different" from a copyright infringement claim,
courts should analyze "what the plaintiff seeks to protect, the
theories in which the matter is thought to be protected and the
rights sought to be enforced." Briarpatch 373 F.3d at 306
(alterations omitted) (quoting Comput. Assocs., 982 F.2d at
716). See also Integrative Nutrition, Inc. v. Acad. of Healing
Nutrition, 476 F. Supp. 2d 291, 295-96 (S.D.N.Y. 2007).

The parties do not dispute that the subject matter
requirement has been met.  Jewelry is subject to copyright
protection.  However, the parties dispute whether there is an
extra element in the claim for either unfair competition or
trade dress infringement that renders the claim "qualitatively
different" from a copyright infringement claim. See Briarpatch,
373 F.3d at 306.

**B.**

In Count Three of her First Amended Complaint, the
plaintiff has alleged a claim for common law unfair competition
and for trade dress infringement.

To assert a claim for unfair competition under New York's
common law, "a plaintiff must show either actual confusion in an
action for damages or a likelihood of confusion for equitable
relief". Eyal R.D. Corp. v. Jewelex New York Ltd., 784 F. Supp.

26

2d 441, 447 (S.D.N.Y. 2011) (internal citations omitted). The plaintiff must also show bad faith. Id.

Depending on the nature of the rights asserted, an unfair competition claim may fall within the general scope of copyright. The Copyright Act preempts unfair competition claims "grounded solely in the copying of a plaintiff's protected expression." Kregos v. Assoc. Press, 3 F.3d 656, 666 (2d Cir. 1993) (citing Comput. Assocs., 982 F.2d at 717); see also Integrative Nutrition, Inc., 476 F. Supp. 2d at 296-97. "[I]n order to avoid preemption, that which is claimed to be unfair competition must be something different from copying, or the fruits of copying, or the intent or bad faith that can be inferred from the act of copying; if the harm arises from the simple fact of copying, the claim falls within the Copyright Act and is preempted." Eyal R.D. Corp., 784 F. Supp. 2d at 447 (citing Comput. Assocs., 982 F.3d at 717).

Therefore, to survive preemption, the plaintiff must allege that the confusion forming the basis for the unfair competition claim was created by some act other than copying. Such allegations can include the use of the plaintiff's trademark on the goods or an active deception to customers through words or deeds that the product came from the plaintiff. See Gemveto Jewelry Co. v. Jeff Cooper, Inc., 613 F. Supp. 1052, 1064 (S.D.N.Y. 1985) (Weinfeld, J.) (holding that an unfair

27

competition claim was not preempted because "there was proof . . . of a deliberate attempt by [the defendant] to deceive the consuming public as to the source of its 'knockoffs'", such as using the plaintiff's drawings in advertisements and using a trademark that looked markedly similar to the plaintiff's), vacated on other grounds, 800 F.2d 256 (Fed. Cir. 1986).  Where the only source of alleged confusion stems from the fact that the defendant's products have a similar design to the plaintiff's (presumably because the design was copied), the claim is preempted.  See Comput. Assocs., 982 F.2d at 717 ("Unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted."); Eyal R.D. Corp., 784 F. Supp. 2d at 447 ("The complaint does not allege, for instance, the efforts of a salesman or a company, by words or deeds, to deceive consumers into believing that accused merchandise is something else, a claim that might not be preempted because it would involve allegations beyond the scope of the Copyright Act.").  Unfair competition claims based on copying contain "no element to qualitatively differentiate

[them] from those areas protected by copyright". See Kregos, 3
F.3d at 666.[5]

The plaintiff has also alleged in Count Three a claim of
common law trade dress infringement. To plead a claim for trade
dress infringement under New York common law, a plaintiff must
prove "(1) that its trade dress is distinctive or has acquired
secondary meaning; and (2) that a likelihood of confusion exists

---

[5] The parties quibble over whether the plaintiff's claim is
properly characterized as one of "passing off" or "reverse
passing off". In fact, it is neither -- it is simply a claim of
alleged copyright infringement disguised as a claim for unfair
competition and is therefore preempted. "Reverse passing off"
occurs when the alleged infringer sells the plaintiff's products
as its own. See Waldman Pub. Corp. v. Landoll, Inc., 43 F.3d
775, 780 (2d Cir. 1994) (defining "reverse passing off" as a
situation "in which 'A' sells 'B's' product under 'A's' name");
Integrated Nutrition, 476 F. Supp. 2d at 297. "Passing off"
occurs when the alleged infringer sells its own products
(allegedly copied from plaintiff's) as the plaintiff's. Id.
This case is neither. In this case, the alleged infringer is
selling its own products (allegedly copied from plaintiff's) as
its own. This is neither "passing off" nor "reverse passing
off". It is alleged copyright infringement and is preempted.
As Professor Nimmer explains: "If A claims that B is selling
B's products and representing to the public that they are A's,
that is passing off. If, by contract, B is selling B's products
and representing to the public that they are B's, that is not
passing off. A claim that the latter activity is actionable
because B's product replicates A's, even if denominated 'passing
off,' is in fact a disguised copyright infringement claim, and
hence pre-empted. (Under those circumstances, the claim often
reduces to reverse passing off, which is pre-empted.)" 1 Nimmer
on Copyright § 1.01[B][1][e] (emphasis added). The claim in
this case does not reduce to "reverse passing off", because the
defendant is selling its own products, not the plaintiff's.
There is also no true "passing off" claim, because the
defendants are not selling their jewelry as the plaintiff's
jewelry.

between its product and the defendant's product." Eyal R.D. Corp., 784 F. Supp. 2d at 448. The plaintiff must also establish that the trade dress is not functional. Id.

Whether a claim for common law trade dress infringement is preempted depends on the nature of the rights asserted. "In some circumstances, the elements of 'likelihood of confusion' and 'secondary meaning' are considered extra elements that extend beyond the Copyright Act." Eyal R.D. Corp., 784 F. Supp. 2d at 448 (citing Eliya, Inc. v. Kohl's Dept. Stores, No. 06-cv-195, 2006 WL 2645196, at *5 (S.D.N.Y. Sept. 13, 2006); U-Neek, Inc. v. Wal-Mart Stores, Inc., 147 F. Supp. 2d 158, 174 (S.D.N.Y. 2001)). However, like common law claims for unfair competition, a common law claim of trade dress infringement is nevertheless preempted if it is grounded solely on allegations of copying. Id.

Here, in support of her claims in Count Three, the plaintiff has asserted in conclusory fashion that the "Infringing Works are manifest reproductions of the Wolstenholme Works and Wolstenholme Trade Dress", FAC ¶ 53, and that "[d]efendants have reproduced, copied and imitated the Wolstenholme Trade Dress in designing certain of their jewelry in a manner that is confusingly similar to the distinctive trade dress of Wolstenholme", FAC ¶ 89. She further alleges that the defendants are "improperly trading upon [the plaintiff's]

goodwill and valuable rights in and to the Wolstenholme Trade Dress." FAC ¶ 90.

The plaintiff alleges no facts supporting her common law claims for unfair competition or trade dress infringement beyond those of mere copying. She does not allege that the defendant's salespersons or the company acted in any way to confuse customers by, for example, using the plaintiff's trademark or affirmatively stating to the public that the jewelry came from the plaintiff. See Eyal R.D. Corp., 784 F. Supp. 2d at 447-48. She also does not allege that the defendants held out their goods as the plaintiff's.

In fact, each of the Hirst Works incorporate charms that specifically identify the designer as Damien Hirst. The Hirst Bracelets both contain a plaque charm engraved with Mr. Hirst's name, and the Hirst Necklace has a charm engraved with Mr. Hirst's initials. If anything, this evinces a desire by the defendants to ensure that consumers are not confused about the source of the jewelry. It would be implausible for the plaintiff to allege that the defendants were attempting to sell their jewelry -- which is priced at many multiples of the plaintiff's works -- by suggesting that it is somehow related to the plaintiff's works. Moreover, the large differences in price would weigh against any likelihood of confusion.

Thus, the plaintiff has failed to allege, in any more than a conclusory fashion, an extra element that makes her common law claims of unfair competition or trade dress infringement "qualitatively different" from a claim for copyright infringement. See Briarpatch, 373 F.3d at 306.

Because the plaintiff has not sufficiently alleged the extra elements necessary to state a claim for either common law unfair competition or trade dress infringement, Count Three should also be dismissed for failure to state a claim. See Iqbal, 129 S. Ct. at 1949 ("[A] formulaic recitation of the elements of a cause of action [is insufficient to state a claim].").

### C.

In Count Four of the First Amended Complaint, the plaintiff alleges a state law claim for unfair competition under Section 360 of the New York General Business Law. The plaintiff claims that this is actually a claim for a violation of Section 360-1 of the General Business Law, which is a claim for dilution.[6] To

---

[6] Count Four alleged a claim for "Unfair Competition under New York General Business Law § 360". FAC ¶¶ 97-99. However, Section 360 is a definitional section which does not provide a basis for liability. In a subsequent letter submitted to the Court after oral argument on the pending motion, the plaintiff contended that she intended to bring a claim pursuant to Section 360 et seq. and specifically a claim under Section 360-1. (Dkt. No. 46.) In support of this claim, she cites to International Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc., 64 F. Supp. 3d 494, 523 (S.D.N.Y. 2014), a case that does not cite to

state a dilution claim under Section 360-l, a plaintiff must allege: "(1) that the trademark is truly distinctive or has acquired secondary meaning, and (2) a likelihood of dilution either as a result of 'blurring' or tarnishment.'" Eyal, 784 F. Supp. 2d at 449. However, "where a plaintiff can only plead facts to allege harm from copying, a claim under Section 360-l should be considered preempted." Id.; see Comput. Assoc., 982 F.2d at 717.

Here, in support of Count Four, the plaintiff merely alleges that the defendants have created and sold "lookalike Wolstenholme designs". FAC ¶ 98. This is a quintessential claim of copying, and the plaintiff has failed to allege sufficiently any extra element beyond those allegations of copying. Count Four is therefore preempted by the United States Copyright Act. See Eyal, F. Supp. 2d at 449; Bubble Genius LLC v. Smith, 239 F. Supp. 3d 586, 603-04 (E.D.N.Y. 2017).

The plaintiff has also failed to state a claim under Count Four, because she has not sufficiently alleged the elements to make out a claim of dilution. See Iqbal, 129 S. Ct. at 1949.

---

Section 360 of the New York General Business Law and does not discuss preemption. Therefore, this claim should be dismissed because it was not brought pursuant to a provision of the New York General Business Law that provides a basis for liability. However, for purposes of completeness, the Court explains in the text that the plaintiff has no viable claim under Section 360-l of the General Business Law.

Further, New York law "does not permit a dilution claim unless the marks are 'substantially similar.'" Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 111 (2d Cir. 2010). For the reasons explained above, the defendants' works are not substantially similar to the plaintiff's works.

D.

Overall, in the state law claims alleged in Counts Three and Four of the First Amended Complaint, the plaintiff has not alleged that the defendants took any actions that have caused her harm other than their alleged copying of her works. The plaintiff alleges that the defendants "copied and/or created derivative works of the Wolstenholme Works", "deliberately copied and misappropriated [her designs]," and created "manifest reproductions of the Wolstenholme Works and Wolstenholme Trade Dress". FAC ¶¶ 45, 48, 53. With these allegations, the plaintiff is merely seeking to enforce her exclusive right to reproduce, distribute and display her protectable works, and those rights are protected by the Copyright Act. See Kregos, 3 F.3d at 666 ("A state cause of action is preempted by federal copyright laws if . . . the state-law right asserted is equivalent to the exclusive rights protected by federal copyright law."); Comput. Assocs., 982 F.2d at 716 (in determining whether a state law claim has an extra element, courts must consider "what plaintiff seeks to protect, the

theories in which the matter is thought to be protected and the rights sought to be enforced").

Accordingly, plaintiff's state law claims alleged in Counts Three and Four of the First Amended Complaint are dismissed because they are preempted by the United States Copyright Act.

## VI.

The plaintiff has voluntarily withdrawn her request for statutory damages and attorneys' fees based on the "Hail Mary" application without prejudice. That request is also moot in light of the Court's decision on the defendants' motion to dismiss. Accordingly, the Court dismisses those claims, without prejudice.

**CONCLUSION**

The Court has considered all of the remaining arguments of the parties. To the extent not specifically addressed above, they are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is granted. The plaintiff's request for leave to replead is denied without prejudice to filing a formal motion that includes a copy of the proposed amended pleading. If the plaintiff does not file such a motion within twenty-one days of the date of this opinion, or if the defendants successfully oppose that motion, all claims will be dismissed with prejudice. The Clerk is directed to close all pending motions.

**SO ORDERED.**

**Dated:**     **New York, New York**
              **September 25, 2017**

                                    John G. Koeltl
                              United States District Judge